# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9370 | **DATE** | 11/30/2004 |
| **CASE TITLE** | Jenny Rubin, et al. vs. Islamic Republic of Iran, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Citation respondents' motion for a discovery protective order precluding plaintiffs from seeking the information relating to the Persepolis and Chogha Mish collections is granted. Plaintiffs' motion for contempt sanctions against citation respondents is denied [15-1] [15-2].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 11/30/2004 | |
| IS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JENNY RUBIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 03 C 9370 |
| | ) | |
| v. | ) | Judge Blanche M. Manning |
| | ) | |
| THE ISLAMIC REPUBLIC OF IRAN, et al., | ) | Magistrate Judge Martin C. Ashman |
| | ) | |
| Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNIVERSITY OF CHICAGO, et al, | ) | |
| | ) | |
| Citation Third Party Respondents. | ) | |

DOCKETED DEC 0 1 2004

## MEMORANDUM OPINION AND ORDER

The discovery matter now before this Court concerns Plaintiffs', Jenny Rubin, Deborah Rubin, Daniel Miller, Abraham Mendelson, Stuart E. Hersch, Renay Frym, Noam Rozenman, Elena Rozenman, and Tvi Rozenman (collectively "Plaintiffs"), citation claiming assets of The Islamic Republic of Iran (a/k/a Iran, The Republic of Iran, Republic of Iran, The Government of Iran, Iranian Government, and Imperial Government of Iran), The Iranian Ministry of Information and Security, Ayatolla Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani, and Ali Fallahian-Khuzestani (collectively "Defendants"). This matter comes before this Court pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1.

Citation Respondents, The University of Chicago a/k/a and/or d/b/a The Oriental Institute and Gil Stein (collectively the "Citation Respondents"), move this Court to enter a discovery protective order establishing that the Oriental Institute's creation of academic volumes documenting its translation of certain Iranian antiquities is irrelevant, as a matter of law, to Plaintiffs' citation proceeding. Plaintiffs oppose Citation Respondents' motion and argue that the documents in question are relevant to their citation claiming Iranian Government assets and are therefore discoverable pursuant to Rule 26 of the Federal Rule of Civil Procedure. In a related motion, Plaintiffs move the Court to impose contempt sanctions against Citation Respondents for failure to comply with Judge Manning's June 24, 2004 discovery order. For the reasons that follow, Citation Respondents' motion is granted and Plaintiffs' motion is denied.

## I. Background

On September 4, 1997, Plaintiffs received personal injuries when the Palestinian terrorist organization Hamas carried out a triple suicide bombing at a crowded pedestrian street mall in Jerusalem, Israel. *Campuzano, et al. v. The Islamic Republic of Iran, et al.*, 281 F. Supp. 2d 258, 261 (D.D.C. 2003). On July 31, 2001, Plaintiffs sued Defendants for their injuries in the United States District Court for the District of Columbia alleging that Defendants provided material support to Hamas. *Id.* Jurisdiction over Plaintiffs' claims was based on the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1601 et seq. *Id.* On March 6, 2002, the Clerk entered default against Defendants. *Id.* And on August 2, 2002, Plaintiffs' case was consolidated for further proceedings with another group of plaintiffs making similar allegations arising out of the same incident. *Id.*

On September 10, 2003, the United States District Court for the District of Columbia found that Plaintiffs proved by "evidence satisfactory to the court," as well as "clear and convincing evidence," that Defendants provided direct material support to Hamas for the purpose of carrying out acts of extrajudicial killing, including the bombing at issue, and were liable for Plaintiffs' personal injuries caused by the bombing. *Id.* at 269-72. The Court then entered judgments on behalf of Plaintiffs against Defendants. The Court awarded Plaintiffs the following compensatory damages: $7 million to Jenny Rubin, $2.5 million to Deborah Rubin, $12 million to Daniel Miller, $12 million to Abraham Mendelson, $12 million to Stuart E. Hersch, $6 million to Renay Frym, $15 million to Noam Rozenman, $2.5 million to Elena Rozenman, and $2.5 million to Tvi Rozenman. *Id.* at 275-77. The Court also awarded those Plaintiffs who were present at the bombing, namely Jenny Rubin, Daniel Miller, Abraham Mendelson, Stuart E. Hersch, and Noam Rozenman, $37.5 million each in punitive damages, which can be collected jointly and severally from all Defendants except The Islamic Republic of Iran. *Id.* at 279.

Citation Respondents are in possession of various collections of Iranian antiquities. In particular, Citation Respondents possess two collections of ancient Persian seal impressions and cuneiform writings found on clay tablets and tablet fragments that were recovered in excavations in Iran in the 1930s and 1960s. (Citation Resps.' Mem. at 2.) The larger of the two collections, known as the Persepolis Fortification Texts, includes tablets and tablet fragments from the reign of Darius I (500 B.C.). (Id.) The other collection, known as the Chogha Mish collection, consists of a relatively small number of clay seal impressions. (Id.) The Persepolis Fortification Texts and the Chogha Mish collection were loaned to Citation Respondents, in the 1930s and 1960s respectively, to study for philological and archeological purposes with the understanding

that the collections would be returned to Iran when Citation Respondents' studies were complete. (Id.) Over the ensuing decades, much research and publication has been generated by these collections. (Id. at 3.) In accordance with the loan agreement, portions of the collections have been returned to Iran as the study was completed. (Id.) At present, study of the Chogha Mish collection has been completed and the collection is due to be returned to Iran pending the resolution of a claim at the Iran-United States Claims Tribunal in The Hague. (Id.) The Persepolis Fortification Texts have never been involved in any Iran-United States Claims Tribunal proceedings. (Id.) For now, the bulk of both collections remain in the United States. (Id.)

Attempting to enforce their judgment against Defendant Iran, Plaintiffs seek execution or attachment against the Persepolis and Chogha Mish collections. Though the FSIA ordinarily protects the property of a foreign sovereign from judgments like Plaintiffs', Plaintiffs argue that the Persepolis and Chogha Mish collections fall into the FSIA's commercial activity exception, 28 U.S.C. § 1610(a) ("Section 1610(a)"), because the collections have been used for publishing and selling books in the United States. (Pls.' Mem. in Opp. at 5-6.)

Pursuing their Section 1610(a) commercial exception theory, on May 20, 2004, Plaintiffs obtained a Citation to Discover Assets pursuant to Rule 69 of the Federal Rules of Civil Procedure, a copy of which was mailed to Citation Respondents. Following several weeks of discovery disputes, on July 6, 2004, Judge Blanche M. Manning issued a discovery order, requiring Citation Respondents to produce all documents and information requested in Plaintiffs' Citation. Unsatisfied with Citation Respondents' compliance with Plaintiffs' discovery requests

or Judge Manning's Discovery Orders, on July 24, 2004, Plaintiffs moved this Court to impose contempt sanctions against Citation Respondents. That motion is still before this Court.

Since July 2004, Citation Respondents have produced for Plaintiffs information and documents pertaining to publications related to the Persepolis and Chogha Mish collections, as well as insurance documents, export declarations and correspondence between Citation Respondents and Defendant Iran. Plaintiffs continue to seek information on the names, printing costs, publication quantities, sales and net profits of all of Citations Respondents' publications (including books, journals, articles, pamphlets, photographs, etc.) concerning the Persepolis and Chogha Mish collections. Plaintiffs argue that this information is relevant to their Section 1610(a) claim and must be produced. (Id.) While the Court did not rule on the merits of Plaintiffs' discovery demands, on November 24, 2004, the Court extended Plaintiffs' May 20, 2004 Citation to Discover Assets by an additional six months.

## II. Discussion

Citation Respondents argue that Plaintiffs' outstanding discovery requests are outside the scope of the Court's discovery order and are irrelevant to Plaintiffs' claims against Defendants. Accordingly, Citation Respondents move this Court to issue a discovery protective order making detailed information of sales and profits of their publications not discoverable. (Citation Resps.' Mem. at 6.)

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, the scope of discovery is generally very broad, incorporating any nonprivileged documents and/or tangible things that are relevant to the subject matter involved in the action. Fed. R. Civ. P. 26(b)(1). Requests for

discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001). Courts commonly look unfavorably upon significant restrictions placed upon the discovery process. *Id.* And the burden is upon the objecting party to show why a discovery request is improper. *Id.* at 612. It is also true, however, that open-ended fishing expeditions will not be tolerated. Discovery has limits and these limits grow more formidable as the showing of need decreases. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 904 (7th Cir. 1981).

Whether Plaintiffs' discovery requests are relevant to the subject matter of this action is determined by the FSIA. Plaintiffs relied on the FSIA to establish subject matter jurisdiction over Defendants. *Campuzano, et al.*, 281 F. Supp. 2d at 261. Plaintiffs are now attempting to enforce their judgment against Defendant Iran by targeting Iranian property currently in the possession of Citation Respondents. Under the FSIA, the property of a foreign sovereign is immune from execution unless that property is "used for a commercial activity in the United States." 28 U.S.C. § 1610(a). The commercial character of an action depends upon the nature of the activity, not the purpose. 28 U.S.C. § 1603(d). Thus, when applying the commercial activity exception, the Supreme Court focuses on the actions of the foreign sovereign and finds commercial activity within the meaning of the FSIA where "a foreign government acts, not as a regulator of a market, but in the manner of a private player within it . . . ." *Republic of Argentina v. Weltover Inc.*, 504 U.S. 607, 614 (1992). In other words, the commercial activity exception to the FSIA requires that the foreign sovereign's property was used by the foreign sovereign in the

United States for commercial purposes. *See* 28 U.S.C. §§ 1605, 1610(a); *Weltover Inc.*, 504 U.S. at 614.

Plaintiffs argue that the commercial activity exception applies in this case because Citation Respondents are using Defendant Iran's property for commercial activities in the United States. (Pls.' Mem. in Opp. at 5-6.) Citation Respondents have studied and translated the Persepolis and Chogha Mish collections and have published their findings in books. Publishing and selling academic treatises may be commercial activities by nature. *See Sun v. Taiwan*, 201 F.3d 1105, 1109 (9th Cir. 2000) ("Compiling academic treatises is the kind of activity that private publishers do perform.") Because Defendant Iran's property may be in commercial use in the United States, Plaintiffs believe Defendant Iran has waived its foreign sovereign immunity per Section 1610(a). (Pls.' Mem. in Opp. at 4.) Plaintiffs argue that all documents relating to this commercial use are relevant to their claim and are therefore discoverable. Accordingly, Plaintiffs demand information on the printing costs and sales of any scholarly publications concerning the Iranian collections as follows:

Documents containing and/or presenting the full details of all relevant publications, as defined below:

The term "relevant publications" means:

a) All publications listed in documents 129-135; and

b) Any other publication of any type (including without limitation books, journals, articles, pamphlets, photographs, etc.) published at any time and in any medium by the University of Chicago Press and/or the Oriental Institute, describing or analyzing the Persepolis

and Chogha Mish collections, or otherwise based on and/or resulting from the University's use and/or possession of the Persepolis and Chogha Mish collections.

The term "full details" means:

a) The names and starting and ending publication dates of each relevant publication;

b) The publication quantity of each relevant publication (i.e., how many copies of each item were printed and/or published);

c) The gross sales price (cost to purchaser) of each relevant publication (wholesale and/or retail as applicable);

d) The net (before tax) profit made from the sale of each relevant publication;

e) The quantity sold of each relevant publication.

(Citation Resps.' Mem. at 5.)

Plaintiffs' discovery requests focus solely on the actions and publications of Citation Respondents. The Court finds that the proper focus of the commercial activities inquiry, however, is not Citation Respondents but Defendant Iran. Under Section 1610(a), it is the actions of the foreign sovereign that determine whether immunity is waived. *Weltover, Inc.*, 504 U.S. at 614 (finding that immunity is waived where foreign sovereign engages in commerce in the manner of a private entity but not when foreign sovereign exercises powers unique to sovereign); *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 257 n.5 (5th Cir. 2002) ("[W]hat matters under the statute is how the *foreign state* uses the property, not how

- 8 -

private parties may have used the property in the past . . . ."); *Flatow v. Islamic Republic of Iran*, 76 F. Supp. 2d 16, 23 (D.D.C. 1999) ("[T]he FSIA was designed to subject foreign states to the laws of the United States when they choose to engage in private commercial activity."). This focus on the foreign sovereign is not only the letter of the law[1] but it makes sense from a policy perspective, as immunity belongs to the foreign sovereign and whether immunity is waived properly depends upon the actions of the foreign sovereign. *See Weltover, Inc.*, 504 U.S. at 614; *Flatow*, 76 F. Supp. 2d at 23. Thus, whether or not Citation Respondents are in possession of properties that are subject to the Section 1610(a) exception will depend on whether those properties were used for commercial activities in the United States by Defendant Iran. Documents that relate exclusively to the actions of Citation Respondents cannot shed light on this question.

Plaintiffs argue that a more expansive reading of Section 1610(a) is required. Plaintiffs cite to *Sesostris v. Transportes Navales, S.A.*, for the proposition that commercial use by the foreign sovereign is not required under Section 1610(a). 727 F. Supp. 737, 744 (D. Mass. 1989). In *Sesostris*, a mortgagee bank in possession of an arrested boat claimed to be a wholly-owned subsidiary of the Spanish government and therefore entitled to immunity under the FSIA. *Id* at 743. The *Sesostris* Court rejected the bank's immunity claim as unsupported by factual evidence and refused to dismiss the claims against the bank. *Id.* In dicta, the *Sesostris* Court went on to state that, even if the FSIA did apply, a foreign sovereign's bank that provides financing for the construction of vessels and claims to be a mortgagee of the vessel in dispute waives its immunity

---

[1] This Court agrees with the holdings in *Connecticut Bank of Commerce* and *Flatow* (cited above), and finds that the U.S. Supreme Court's analysis in *Weltover, Inc.* applies to Section 1610(a) as well as 28 U.S.C. § 1605.

under Section 1610(a). *Id.* at 744. The Court will not reinterpret Section 1610(a) based on the holding in *Sesostris*. As an initial matter, to the extent that Plaintiffs' position is bolstered by *Sesostris* it is only by *Sesostris'* dicta, not its actual holding. Furthermore, the *Sesostris* dicta addresses the issue of commercial financing by a financial institution that is wholly-owned by a foreign sovereign. *Id.* at 743-44. In such a case, it is obvious that the foreign sovereign engaged in commercial activity. Citation Respondents are not a financial institution, not obviously engaged in commercial activity, and not subsidiaries of Defendant Iran. Thus, the Court does not find *Sesostris* to be meaningfully relevant to the case at bar.

The Court denies Plaintiffs' discovery requests. Per Section 1610(a), the subject matter of this action is the activities of the foreign sovereign, Defendant Iran. Plaintiffs' discovery requests focus solely on the activities of Citation Respondents, and are therefore irrelevant to this action. Because discovery is only available for relevant subject matter, the Court denies Plaintiffs' discovery requests currently before the Court and grants Citation Respondents' motion for a discovery protective order.

Having ruled in favor of Citation Respondents, the Court refuses to impose contempt sanctions against Citation Respondents for their failure to comply with earlier discovery orders, as there was merit to Citation Respondents' position. Accordingly, the Court denies Plaintiffs' motion for contempt sanctions.

Finally, the Court's ruling is made in spite of its natural sympathy with Plaintiffs. Today, more than ever, Americans recognize the horror and devastation of terrorism. Plaintiffs have incurred severe injuries at the hands of Defendant Iran, a state sponsor of terrorism, and its proxies. It would be easy and perhaps cathartic for this Court to bend the rules in the name of

justice and compassion, and permit Plaintiffs every liberty as they seek compensation for their wounds. Expansion of rights of attachment in this country, however, would invite other countries to expand their citizens' rights to attach U.S. property. But more importantly, the United States of America is built upon laws and our laws keep us free. This Court is loath to see our rights and freedoms, here or abroad, crumble in response to terrorist murder and mayhem, so today we do not bend or make exceptions to the law. Rather, the Court enforces the law, confident that Plaintiffs will ultimately find justice and that our nation's resolve in upholding our legal system will preserve freedom in this country and inspire respect for life and liberty in even the darkest corners of the world.

### III. Conclusion

For the foregoing reasons, the Court grants Citation Respondents' motion for a discovery protective order precluding Plaintiffs from seeking the information relating to the Persepolis and Chogha Mish collections discussed above. Furthermore, the Court denies Plaintiffs' motion for contempt sanctions against Citation Respondents.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
Dated: November 30, 2004.   United States Magistrate Judge

Copies have been mailed to:

| | |
|---|---|
| TIMOTHY M. MURPHY, Esq.<br>Timothy M. Murply, P.C.<br>3758 West Montrose Avenue<br>Chicago, IL 60618 | THOMAS A. DOYLE, Esq.<br>MATTHEW G. ALLISON, Esq.<br>HILLARY PAIGE KRANTZ, Esq.<br>Baker & McKenzie<br>130 East Randolph Drive<br>Suite 3200<br>Chicago, IL 60601 |
| DAVID J. STRACHMAN, Esq.<br>McIntyre, Tate, Lynch & Holt<br>321 South Main Street<br>Suite 400<br>Providence, RI 02903 | LAWRENCE W. NEWMAN, Esq.<br>JACOB M. KAPLAN, Esq.<br>Baker & McKenzie<br>805 Third Avenue<br>New York, NY 10022 |
| Attorneys for Plaintiffs | Attorneys for Citation Third Party<br>Respondents |