# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JENNY RUBIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | No. 03 CV 9370 |
| THE ISLAMIC REPUBLIC OF IRAN, et al., | ) | Judge Blanche M. Manning |
| | ) | |
| Defendants, | ) | Magistrate Judge Martin C. Ashman |
| v. | ) | |
| | ) | |
| THE UNIVERSITY OF CHICAGO, et al. | ) | |
| | ) | |
| Citation Third Party Respondents. | ) | |

## MEMORANDUM AND ORDER

Displeased with Magistrate Judge Ashman's report and recommendation on the plaintiffs' motion for partial summary judgment, citation respondents the University of Chicago, the Field Museum of Natural History, and Gil Stein have objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Specifically, the citation respondents contend that the magistrate judge misapprehended federal statutes, and cases interpreting them, when concluding that only defendant Iran may assert foreign sovereign immunity over its property located in the United States. However, because the magistrate's report is well-reasoned and correctly interprets laws governing foreign sovereign immunity, the citations respondents' objections are overruled.

*Background*

In 2001, the plaintiffs obtained a federal court judgment in a personal injury suit against Iran and several other defendants. The plaintiffs are now attempting to enforce their judgment by seeking to execute or attach various collections of Persian artifacts in the possession of the

citation respondents. *See* Foreign Sovereign Immunity Act, 28 U.S.C. § 1602 *et seq.* (the FSIA). Iran loaned the artifacts to the citation respondents in the 1930s and 1960s with the understanding that the collections would be returned after archeological studies were completed.

The FSIA governs attempts to sue foreign governments, or to seek to execute or attach property located in the United States that is owned by a foreign government. *See* 28 U.S.C. § 1602 *et seq.* For the most part, property owned by a foreign state is immune from attachment. *See id.* at § 1609 ("the property in the United States of a foreign state shall be immune from attachment arrest and execution"). However, the statute creates two exceptions. Section 1610 creates an exception for property used by the foreign state for a commercial activity. Although during a different stage of this litigation the parties disagreed over whether the commercial activity exception of § 1610 applied, the exception's applicability is not relevant to the motion for partial summary judgment. Neither is the exception created by § 1611, which prohibits the attachment of certain property owned by foreign banks or foreign militaries.

Iran has so far failed to assert its sovereign immunity or even to appear, despite having been given notice of these proceedings. In its absence, the citation respondents have asserted Iran's foreign sovereign immunity under the FSIA to resist the plaintiffs' attempts to execute or attach the Persian artifacts. The plaintiffs responded by filing the instant motion seeking to establish that, as a matter of law, no party other than Iran may assert Iran's sovereign immunity under the FSIA.

The magistrate judge recommended granting the plaintiffs' motion for partial summary judgment. In his report and recommendation, Magistrate Judge Ashman concluded that foreign sovereign immunity is an affirmative defense personal to Iran, and therefore only Iran has

standing to assert the defense. In reaching that conclusion, the magistrate judge rejected the citation defendants' argument that foreign sovereign immunity is not an affirmative defense, but rather is a question of subject matter jurisdiction that can be raised by any party at any time. The magistrate judge also rejected the argument by the citation respondents that the plaintiffs should have raised their standing argument at the same time they filed earlier discovery motions raising arguments under the FSIA. The magistrate judge concluded that the motion was timely because the parties were still in the early stages of litigation.

*Analysis*

    *Standard of Review*

The magistrate judge issued his report and recommendation under the authority granted by 28 U.S.C. § 636(b)(1). As permitted by that statute, the defendants objected. Accordingly, this court reviews the magistrate judge's report and recommendation *de novo*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Pinkston v. Madry*, 440 F.3d 879, 893 (7th Cir. 2006). Normally, in reviewing a motion for summary judgment, the court would decide whether a genuine issue of material fact precluded judgment as a matter of law for the moving party. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, the question presented by the plaintiffs' motion is a purely legal one: may Iran's sovereign immunity under the FSIA be asserted only by Iran?

    *Timeliness of Motion for Partial Summary Judgment*

As a threshold matter, the court agrees with the magistrate judge's conclusion that the plaintiffs' motion for partial summary judgment was timely. As the magistrate judge noted, apart

from the instant motion, the parties have litigated only a few discovery matters. The citation respondents barely address why they believe the magistrate judge's report and recommendation is wrong on this point other than to conclusorily assert that it is. *See Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) (perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are forfeited). Accordingly, they have failed to provide this court with a reason for not accepting the magistrate judge's conclusion.

*Foreign Sovereign Immunity is an Affirmative Defense*

After carefully reviewing the magistrate's report and recommendation, the briefs filed by the parties and the United States, the cases cited, and the FSIA, the court agrees with the magistrate judge's conclusion that foreign sovereign immunity under § 1610 is an affirmative defense. As stated explicitly in a United States House report prepared at the time of the FSIA's passage, foreign sovereign immunity was enacted by Congress as "an affirmative defense which must be specially pleaded." H.R. Rep. No. 94-1487, 9th Cong., 2d Sess., at 17 (1976). Although the quoted language referred to immunity from suit afforded foreign states by § 1604, elsewhere the House Report likens immunity from suit under § 1604 to the immunity that shields a foreign state's property from attachment or execution under § 1609. H.R. Rep. No. 94-1487, at 26 ("As in the case of section 1604 of the bill with respect to jurisdiction, section 1609 states a general proposition that the property of a foreign state, as defined in section 1603(a), is immune from attachment and from execution . . . .")

The citation respondents urge the court not to consider or rely upon the legislative history of the FSIA for two reasons. First, they argue that the court must not turn to legislative history to interpret the statute because the statute's meaning is clear on its face. Specifically, the citation

respondents contend that § 1609's use of the language "*the property* in the United States of a foreign state *shall be immune* from attachment" (emphasis added) unambiguously means that immunity runs with the foreign state's property, regardless of whether the foreign state asserts immunity. In other words, the citation respondents argue, use of the word "shall" makes immunity automatic, and in the absence of one of the exceptions in §§ 1610 or 1611, a district court is without jurisdiction to attach such property. According to the citation respondents, to read into the statute a requirement that the foreign state assert immunity "interpose[s] additional requirements beyond the statute's declaration of immunity."

But § 1609's use of the word "shall" is not as unambiguous as portrayed by the citation respondents. Just a few sections earlier within the same statute, the FSIA creates a ten-year statute of limitations with the language "[n]o action *shall be maintained* under subsection (a)(7) unless the action is commenced not later than 10 years after the day on which the cause of action arose." 28 U.S.C. § 1605(f). Yet despite use of the word "shall," according to Federal Rule of Civil Procedure 8(c), statutes of limitations such as the one created by § 1605(f) are affirmative defenses which, if not asserted, could lead to forfeiture. *See Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003) (failure to assert an affirmative defense will result in waiver if plaintiff is prejudiced by the delay). Use of the word "shall" to create an affirmative defense is not unique to the FSIA—many other instances occur throughout the United States Code. *See, e.g.,* 15 U.S.C. § 1711(a) (statute of limitations); 18 U.S.C. § 2332(a) (statute of limitations); 45 U.S.C. § 56 (statute of limitations).

Second, the citation respondents contend that despite language in House Report 94-1487 describing foreign sovereign immunity as an affirmative defense, the Supreme Court nevertheless

directed district courts to assess immunity *sua sponte* in *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983). In *Verlinden*, the Supreme Court concluded that "sovereign immunity is an affirmative defense that must be specially pleaded," *id.* at 494 n.20, but that a district court must still determine whether immunity is available under the FSIA "even if the foreign state does not enter an appearance to assert an immunity defense." *Id.* at 494 n.20.

The citation respondents seize upon this discussion in *Verlinden* to argue that the magistrate judge erred by granting plaintiffs' motion for partial summary judgment without evaluating *sua sponte* whether Iran's property was immune. But the argument is misinformed. As the Supreme Court explained in *Verlinden*, the district court's responsibility to evaluate immunity *sua sponte* is rooted not in the FSIA, but rather in 28 U.S.C. § 1330(a). Under § 1330(a), federal courts have jurisdiction over actions against foreign states only if "the foreign state is not entitled to immunity either under sections 1605-07 of this title or under any applicable international agreement." 28 U.S.C. § 1330(a). Thus, *Verlinden* is inapposite for two reasons. First, the obligation to evaluate immunity *sua sponte* is created by § 1330(a), not by the FSIA. Second, the immunity that must be evaluated under § 1330(a) is immunity afforded the foreign state itself under § 1604, not afforded its property under § 1609, the only immunity at issue in this case.

Finally, although not a party, the United States has weighed in with its interpretation of the FSIA by filing a statement of interest. In it, the United States argues that the magistrate judge erred by basing his decision upon affirmative defense jurisprudence because, according to the government, immunity from attachment under § 1609 is an affirmative defense, but not "an affirmative defense of the sort the Magistrate Judge assumed." According to the government's

argument, "true" affirmative defenses may be asserted only in responsive pleadings. *See* Fed. R. Civ. P. 8(c) ("In pleading to a preceding pleading, a party shall set forth" its affirmative defenses.) In a proceeding such as this where judgment creditors seek to execute their judgment under Federal Rule of Civil Procedure 69, there are no pleadings. Therefore, the government argues, foreign sovereign immunity under § 1609 cannot be a "true" affirmative defense, but rather must arise "presumptively." Accordingly, the government contends, "Iran's presence should not have been found necessary to judicial review of that presumption."

The court does not find the government's argument to be well-reasoned. First, the government relegates the argument to a footnote, and the argument was not even raised by the citation respondents. Courts have previously held that such arguments are forfeited. *See Weinstein*, 422 F.3d at 477 n.1 (perfunctory and undeveloped arguments are forfeited); *Williams v. General Electric Capital Auto Lease, Inc.*, 159 F.3d 266, 274 (7th Cir. 1998) (argument that appeared only in footnote was undeveloped and, therefore, forfeited).

Second, the government offers nothing to support the distinction it attempts to create between run-of-the-mill affirmative defenses, and the affirmative defense of foreign sovereign immunity created by § 1609, a "sort" of defense that the government contends is actually a presumption. The two Seventh Circuit cases it cites for the proposition that immunity attaches presumptively under the FSIA in fact state nothing of the sort. In *Enahoro v. Abubakar*, 408 F.3d 877 (7th Cir. 2005), the court held that the "party claiming FSIA immunity *bears the initial burden of proof* of establishing a prima facie case that it satisfied the FSIA's definition of a foreign state." *Id.* at 882 (emphasis added); *see also Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 397 (7th Cir. 2002) ("The party claiming immunity under this section

must establish a prima facie case that it is a foreign instrumentality.") Given that the party asserting immunity bears the initial burden of establishing that immunity is available, immunity cannot, at the same time, arise presumptively. *See Enahoro*, 408 F.3d at 882; *Caja Nacional*, 293 F.3d at 397.

Finally, the government's theory leads to the absurd conclusion that affirmative defenses can never be raised in execution proceedings. Such a conclusion necessarily follows the government's argument that affirmative defenses may be asserted only in response to pleadings, even though there are no pleadings in execution proceedings under Rule 69. However, the government's contention that affirmative defenses may not be raised in execution proceedings is simply not true. *See, e.g., Jalapeno Property Mgt., LLC v. Dukas*, 265 F.3d 506, 513-14 (6th Cir. 2001) (statute of limitations raised by defendants against plaintiff's attempt to execute judgment, though appellate court reversed because district court improperly calculated limitations period).

*The Affirmative Defense of Immunity May Be Asserted Only By Iran*

The court agrees not only with the magistrate judge's determination that foreign sovereign immunity under § 1609 is an affirmative defense that must be asserted, but also with the conclusion that the defense may be asserted only by the foreign sovereign. Generally speaking, one party's ability to assert the rights of an absent party are limited. In *Powers v. Ohio*, 499 U.S. 400 (1991), the Supreme Court set forth the two-part test that determines whether one party may assert the rights of an absent party. First, the litigant must have suffered an "injury in fact." *Id.* at 411. Second, prudential considerations must favor permitting the litigant to assert the other party's rights. *Id.* These considerations include how close the litigant's relationship is

to the missing party, and whether a hindrance has prevented the missing party from asserting its rights itself. *Id.*

The citation respondents contend that the magistrate judge incorrectly applied the test set forth in *Powers* to the facts of this case in three ways. First, they argue that the magistrate judge incorrectly concluded that they will not suffer an injury in fact based upon the facts that (1) the Persian collections are currently packaged and awaiting shipment back to Iran; and (2) attachment would be subject to any possessory rights the citation respondents have. Although the citation respondents disagree with the magistrate judge, they do so only conclusory: "he [the magistrate judge] fails to appreciate the factual context in which this dispute takes place, thus causing him to deny that Respondents will suffer a very real injury." By failing to identify any facts the magistrate judge failed to "appreciate," the citation respondents give this court no reason to decline to adopt the magistrate judge's conclusions. *Weinstein*, 422 F.3d at 477 n.1 (undeveloped arguments are forfeited).

The citation respondents also take issue with the magistrate judge's conclusion that prudential considerations do not favor permitting the respondents to assert Iran's immunity. The two concerns they identify are (1) how closely aligned they are with Iran; and (2) Iran's ability to assert its own rights in this case. The court considers each concern in turn.

First, the citation respondents contend that the magistrate judge improperly concluded that they are not closely aligned with Iran by relying on *Singleton v. Wulff*, 428 U.S. 106 (1976). The citation respondents appear to argue that *Singleton* is inapposite because they are in possession of Iran's property, as though under *Singleton* the alignment of parties' interests turns on whether one possesses property of the other. In fact, the magistrate judge relied on *Singleton*

Page 9

simply for the general proposition that parties' interests must be aligned—*Singleton* does not concern possession of property, nor did the magistrate judge imply that it did. The citation respondents also argue that, as bailees, they are obligated under Illinois law to protect Iran's property. Although the citation respondents cite Illinois bailment law, they have failed to cite any case establishing that state bailment law overrides a plaintiff's right to attach property in accordance with the FSIA. Nor is the court aware of any such precedent.

Next, the citation respondents argue that the magistrate judge incorrectly concluded that Iran has not been impeded from asserting its own right to foreign sovereign immunity under § 1609. Under *Powers*, determining whether a foreign sovereign has been impeded from asserting immunity depends upon the existence of "considerable practical barriers to suit" as well as the "incentive to set in motion the arduous process needed to vindicate [the foreign sovereign's] own rights." *Powers* 499 U.S. at 415.

The magistrate judge's conclusion was based primarily on Iran's long history of asserting its foreign sovereign immunity in United States' courts when it so chooses. *See, e.g., Ministry of Defense & Support for Armed Forces of Islamic Republic of Iran v. Cubic Defense Sys.*, 385 F.3d 1206, 1210 (9th Cir. 2004); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 230 (D.C. Cir. 2003); *Cicippio v. Islamic Republic of Iran*, 30 F.3d 164, 165 (D.C. Cir. 1994); *Foremost-McKesson v. Islamic Republic of Iran*, 905 F.2d 438, 440-41 (D.C. Cir. 1990); *Berkovitz v. Islamic Republic of Iran*, 735 F.2d 329, 330-31 (9th Cir. 1984); *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 6 n.1 (D.D.C. 1998). The citation respondents argue that the magistrate judge erred by not also taking into account the "negative treatment Iran has received in U.S. courts," which according to the citation respondents "diminishes Iran's 'incentive to set in

motion the arduous process needed to vindicate [its] rights.'" Citation Respondents' Objections at 14 (citing *Powers*, 499 U.S. at 415). The citation respondents' brazen accusation that the courts of the United States are hostile to Iran and that, as a result, Iran should be excused from bothering to assert its rights, is wholly unsupported.

The citation respondents also contend that the long list of cases cited above in which Iran defended itself "demonstrates that Iran faces numerous 'practical barriers' to suit in the form of extensive defense costs," citing *Powers* as support. Yet the barrier in *Powers* was far more onerous than whatever barrier Iran faces. In *Powers*, a criminal defendant was permitted to assert the equal protection claim of seven jurors allegedly dismissed because of their race. *Powers*, 499 U.S. at 403-04. The Supreme Court's decision was based, in part, on the fact that any attempt by an excluded juror to sue would be "daunting." *Id.* at 415. Specifically, the court found that "because of the small financial stake involved and the economic burdens of litigation," an excluded juror would have "little incentive to set in motion the arduous process needed to vindicate his own rights." *Id.*

The burdens Iran would have faced in this suit would have been inconsequential compared to the burdens described in *Powers*. Iran only needed to assert its immunity in order to protect its rights, as opposed to jurors in *Powers* who would have had to draft a complaint and file suit, engage in discovery and motion practice, proceed to trial and eventually obtain a judgment. To the extent Iran would have incurred fees and costs to defend itself, the citation respondents have made no effort to establish that Iran's defense costs would have been any more burdensome than the costs any defendant to multiple suits faces. Furthermore, the jurors in

*Powers* stood to gain little financially, while Iran stands to retain what appears to be a coveted and irreplaceable collection of artifacts.

Finally, the citation respondents contend that, under their interpretation, § 1610(c) of the FSIA implies that third parties may assert immunity over a foreign sovereign's property. Section 1610(a) and (b) create exceptions to immunity, while (c) requires that, in the event the foreign state has defaulted, adequate notice be given the defaulting foreign state before the exceptions to immunity may be employed. According to the citation respondents, given that (1) § 1610's discussion of exceptions to immunity is relevant only if immunity has been asserted, and (2) immunity could not have been asserted by a foreign state if the foreign state defaulted, the statute must contemplate that immunity was asserted by a third-party.

The court does not disagree with the citation respondent's argument that § 1610(c) operates in the event that a third-party has asserted a foreign state's immunity. However, it does not follow that the citation respondents, as third-parties, are entitled to assert Iran's immunity. As discussed above, only third-parties that meet the factors set forth in *Powers* may assert the foreign state's immunity, and the citation respondents do not meet the *Powers* factors.

Accordingly, the court agrees with the magistrate judge's conclusion that, under the test set forth in *Powers*, the citation respondents are not entitled to assert Iran's foreign sovereign immunity under 28 U.S.C. § 1609.

*Policy Considerations & Executive Branch Concerns*

The citation respondents and the government devote considerable effort to describing various adverse effects that will result unless the magistrate judge's report and recommendation is rejected. For instance, they fear that if the plaintiffs are allowed to attach Iran's property, other

countries will never again lend artifacts to institutions within the United States, that other countries will seize U.S. properties within their borders, and that the relationship between the United States and other countries will be strained.

The court is sympathetic to citation respondents' and government's fears. However, the court is charged with interpreting and applying federal statutes as enacted. As enacted by Congress, the FSIA creates an affirmative defense of foreign sovereign immunity that must be asserted by the foreign state. Even if the court were to agree with the citation respondents and government that international relations would be better served if foreign sovereign immunity were presumed even if not asserted, the court would not be free to ignore the immunity scheme that Congress developed. If the citation respondents and government believe that changes should be made to the FSIA, then they must petition Congress to amend it, not ask the court to ignore it.

*Conclusion*

In sum, the court adopts the magistrate judge's conclusions in his report and recommendation that (1) foreign sovereign immunity under 28 U.S.C. § 1609 is an affirmative defense that must be asserted; and that (2) the citation respondents are not entitled to assert immunity on Iran's behalf. Therefore, the citation respondents' objection to the magistrate judge's report and recommendation is OVERRULED.

ENTER:

DATE:     June 22, 2006                    _____
                                           Blanche M. Manning
                                           U.S. District Court Judge