# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JENNY RUBIN**, et al., | ) | |
| | ) | |
| Plaintiffs-Judgment Creditors, | ) | |
| | ) | Case No. 03 C 9370 |
| v. | ) | |
| | ) | Judge Blanche M. Manning |
| **THE ISLAMIC REPUBLIC** | ) | |
| **OF IRAN**, et al., | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| Defendants-Judgment Debtors, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **THE UNIVERSITY OF CHICAGO**, et al., | ) | |
| | ) | |
| Citation Third-Party Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

The motions before this Court concern the following parties: Plaintiffs Jenny Rubin,

Deborah Rubin, Daniel Miller, Abraham Mendelson, Stuart E. Hersch, Renay Frym, Noam

Rozenman, Elena Rozenman, and Tzvi Rozenman (collectively "Plaintiffs"); and The Islamic

Republic of Iran (a/k/a Iran, The Republic of Iran, Republic of Iran, The Government of Iran,

Iranian Government, and Imperial Government of Iran), The Iranian Ministry of Information and

Security, Ayatollah Ali Hoseini Khamenei, Ali Akbar Hashemi-Rafsanjani, and Ali

Fallahian-Khuzestani (collectively "Defendants"). The matters presently at issue arise from

Defendants' motion to declare certain of its property in the United States exempt from execution

by plaintiffs. Essentially, the parties and the Court treat this motion as a motion for summary

judgment under Federal Rule of Civil Procedure 56. (*See, e.g.*, Def.'s Mem. in Supp. of Revised

Mot. to Declare Property Exempt ("Def.'s Exempt Mem.") at 2.) In response, Plaintiffs move this

Court to allow continued discovery under Federal Rules of Civil Procedure 56(f) and 69(a). This

matter was referred to this Court by Judge Manning pursuant to 28 U.S.C. § 636(b)(1)(A) and

Local Rule 72.1. For the reasons stated below, the Court grants Plaintiffs' 56(f) motion. Because

Plaintiffs are entitled to further discovery, the Court does not rule on Defendants' Motion to

Declare Property Exempt. Plaintiffs have also filed a motion to compel discovery from

Defendants. Inasmuch as the Court finds that Plaintiffs are entitled to discover information to

support their arguments under the FSIA and the TRIA, the Court grants this motion to compel.


## I. Background

The Court has previously recited the facts of this case. *See, e.g., Rubin v. Islamic*

*Republic of Iran*, 349 F. Supp. 2d 1108 (N.D. Ill. 2004). The Court gives a brief recitation of the

facts in order to clarify the case's posture. Plaintiffs instituted a lawsuit in 2001 against

Defendants for injuries they suffered in connection with a suicide bombing in Jerusalem in 1997.

The United States District Court for the District of Columbia entered judgments on behalf of

Plaintiffs and against Defendants. *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258,

274-77 (D.D.C. 2003). As this Court has outlined elsewhere,

> The [*Campuzano*] Court awarded Plaintiffs the following compensatory damages:
> $7 million to Jenny Rubin, $2.5 million to Deborah Rubin, $12 million to Daniel
> Miller, $12 million to Abraham Mendelson, $12 million to Stuart E. Hersch, $6
> million to Renay Frym, $15 million to Noam Rozenman, $2.5 million to Elena
> Rozenman, and $2.5 million to [Tzvi] Rozenman. The [*Campuzano*] Court also
> awarded those Plaintiffs who were present at the bombing, namely Jenny Rubin,
> Daniel Miller, Abraham Mendelson, Stuart E. Hersch, and Noam Rozenman,
> $37.5 million each in punitive damages, which can be collected jointly and
> severally from all Defendants except The Islamic Republic of Iran.

*Rubin*, 349 F. Supp. 2d at 1110 (citing *Campuzano*, 281 F. Supp. 2d at 275-77, 279).

Jurisdiction for that case was based on the Foreign Sovereign Immunities Act ("FSIA"). *See* 28 U.S.C. § 1601 *et seq*.

In order to satisfy their judgment, Plaintiffs are before this Court seeking execution or attachment against Iranian assets that are currently in the United States. These Iranian assets are Persian artifacts, including "collections of ancient Persian seal impressions and cuneiform writings found on clay tablets and tablet fragments." *Rubin v. Islamic Republic of Iran*, 408 F. Supp. 2d 549, 551 (N.D. Ill. 2005). Although the Court need not iterate here the specifics of these artifacts, *see Rubin*, 349 F. Supp. 2d at 1110 (giving some detail of the artifacts), relevant to this motion the artifacts fall into three categories: the Persepolis Collection, the Chogha Mish Collection, and the Herzfeld Collection. (*See* Def.'s Exempt Mem. at 1-2.)

The artifacts in these three collections are currently in the possession of the Oriental Institute of the University of Chicago (the "University" or "University of Chicago") or the Field Museum. The University has had possession of the Persepolis Collection and the Chogha Mish Collection since approximately the 1930s and 1960s, respectively. (Pl.'s Resp. at 2.) Pieces of the Herzfeld Collection are in the possession of the Field Museum. (Def.'s Exempt Mem. at 2.)

## II.    Discussion

### A.    Immunity of Persian Artifacts

The dispute in this case centers around whether the Persian artifacts are immune or exempt from execution or attachment. Plaintiffs have presented two theories that Plaintiffs argue allow them to execute or attach against these artifacts. The first theory involves the Terrorism

- 3 -

Risk Insurance Act ("TRIA"), which provides that properties belonging to Iran that are in the United States are subject to attachment in satisfaction of a judgment debt if those properties are "blocked" within the meaning of the TRIA. *See generally* TRIA, Pub. L. No. 107-297, § 201, 116 Stat. 2,322, 2,337 (codified at 28 U.S.C. § 1610 note). The second theory involves the FSIA, which provides that properties belonging to a foreign state are immune from attachment unless some exception applies. *See* 28 U.S.C. § 1609.

Defendants in their Motion to Declare Property Exempt argue that Plaintiffs have not alleged facts sufficient to show that the Persian artifacts are blocked at this time under the TRIA or that an exception applies under the FSIA. Because no exception applies, these artifacts are exempt from execution, Defendants argue, and Defendants are entitled to summary judgment in their favor in this case because Plaintiffs as a matter of law cannot execute or attach against the Persian artifacts. (*See* Def.'s Exempt Mem. at 2-8.) Plaintiffs respond by moving under Federal Rules of Civil Procedure 56(f) and 69(a) for further discovery in order to support their arguments as to why Iran's sovereign immunity does not apply. (Pl.'s Resp. at 34.)

Rule 56(c) provides that the Court shall grant a summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(f) provides a mechanism that allows the non-moving party to ask the Court to allow further discovery. According to Rule 56(f),

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a

> continuance to permit affidavits to be obtained or depositions to be taken or
> discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). *See also Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006)

("When a party thinks it needs additional discovery in order to oppose a motion for summary

judgment in the manner Rule 56(e) requires, Rule 56(f) . . . provides a simple procedure for

requesting relief: move for a continuance and submit an affidavit explaining why the additional

discovery is necessary." (citations omitted)). Rule 56(f) grants this Court significant discretion as

to whether more discovery is appropriate.

Although the Court has great discretion, Rule 56(f) will not allow a party to engage in

fishing expeditions; Plaintiffs must be able to show what facts they intend to discover and how

those facts will relate to their case. Rule 56(f) is not a shield that can be raised to block a motion

> for summary judgment without even the slightest showing by the opposing party
> that his opposition is meritorious. A party invoking its protections must do so in
> good faith by affirmatively demonstrating why he cannot respond to a movant's
> affidavits . . . and how postponement of a ruling on the motion will enable him, by
> discovery or other means, to rebut the movant's showing of the absence of a
> genuine issue of fact.

*Korf v. Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir. 1984) (italics omitted) (quoting *Lamb's

Patio Theatre v. Universal Film Exchs.*, 582 F.2d 1068, 1071 (7th Cir. 1978)). *See also Deere &

Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006) ("A Rule 56(f) motion must state the

reasons why the party cannot adequately respond to the summary judgment motion without

further discovery and must support those reasons by affidavit."); *Spivey v. Godinez*, 95 C 0297,

1997 U.S. Dist. Lexis 15255, at *5 (N.D. Ill. Sept. 24, 1997) (finding that the district court

properly exercised its discretion in denying pro se party's request for further discovery under Rule

56(f) because the party "[did] not state what the testimony of these witnesses would be and how the testimony would establish the liability of the defendants").

As discussed below, Plaintiffs have sufficiently shown what they expect further discovery to unearth and how this expected discovered material would advance their arguments. Thus, the Court finds that the requirements of Rule 56(f) are met, and the Court grants Plaintiffs' motion for further discovery.[1] Because further discovery is forthcoming, the Court does not decide any issues pertaining to the merits of Defendants' motion for summary judgment.

### 1.    TRIA

The Court first addresses Plaintiffs' argument that the TRIA allows Plaintiffs to execute or attach against the Persian artifacts. Section 201 of the TRIA provides that

> in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA, Pub. L. No. 107-297, § 201(a), 116 Stat. 2,322, 2,337. The parties do not dispute that Iran is a terrorist party within the meaning of the TRIA. The parties' dispute centers around whether

---

[1] In addition to seeking discovery under Rule 56(f), Plaintiffs have generally sought discovery under Federal Rule of Civil Procedure 69(a). (Pl.'s Resp. at 34.) Rule 69(a) provides a mechanism that allows a party "to enforce a judgment for the payment of money," and it allows that party to "obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held." Fed. R. Civ. P. 69(a). Because Rule 69 directs this Court to consider whether discovery is proper under the Federal Rules of Civil Procedure, the Rule 69 analysis is subsumed in the Court's analysis as to whether discovery is appropriate under Rule 56(f).

the Persian artifacts are "blocked." The TRIA defines "blocked assets": "The term 'blocked asset' means–(A) any asset seized or frozen by the United States under . . . sections 202 and 203 of the International Emergency Economic Powers Act." TRIA, Pub. L. No. 107-297, § 201(d)(2), 116 Stat. 2,322, 2,339. Pursuant to the International Emergency Economic Powers Act, the President in 1979 issued Executive Order number 12,170, which "blocked all property and interests in property of the Government of Iran . . . which are or become subject to the jurisdiction of the United States or which are in or come within the possession or control of persons subject to the jurisdiction of the Untied States." Exec. Order No. 12,170, 44 Fed. Reg. 65,729 (Nov. 14, 1979). Thus, as both parties recognize, under Executive Order No. 12,170 the Persian artifacts were blocked and therefore subject to execution under the TRIA.

The parties do not agree on the issue of whether the Persian artifacts are currently blocked. At the crux of the disagreement is whether a subsequent executive order unblocked the Iranian artifacts. In 1981, the President issued Executive Order No. 12,281, which the Treasury Department implemented via 31 C.F.R. § 535.215. *See* Exec. Order 12,281, 46 Fed. Reg. 7,923 (Jan. 19, 1981). Section 535.215–echoing the directives in Executive Order No. 12,281–directed all people having "properties" owned by Iran to transfer those properties according to the wishes of the Iranian government. 31 C.F.R. § 535.215(a). By directing holders of Iranian property to transfer those properties pursuant to Iran's wishes, § 535.215(a) "unblocks" Iranian properties that were previously blocked by Executive Order No. 12,170.

The parties dispute whether the Persian artifacts that comprise the Persepolis Collection, the Chogha Mish Collection, and the Herzfeld Collection are considered "properties" within the meaning of § 535.215(a). Section 535.215 refers to 31 C.F.R. § 535.333 for the definition of

- 7 -

"properties." Section 535.333(a) states that "properties" means "all uncontested and non-contingent liabilities and property interests of the Government of Iran." 31 C.F.R. § 535.333. Thus, the present issue boils down to whether the Iran artifacts are "contested" within the meaning of § 535.333. On this issue, § 535.333(c) gives the Court guidance: Iran's property interests

> may be considered contested only if the holder thereof reasonably believes that Iran does not have title or has only partial title to the asset. After October 23, 2001, such a belief may be considered reasonable only if it is based upon a bona fide opinion, in writing, of an attorney licensed to practice within the United States stating that Iran does not have title or has only partial title to the asset.

31 C.F.R. § 535.333(c). Plaintiffs seek to prove that the ownership of the Persepolis Collection, the Chogha Mish Collection, and the Herzfeld Collection is contested, meaning that none of these collections of Persian artifacts was unblocked by Executive Order No. 12,281 and that all are subject to execution to satisfy Plaintiffs' judgment debt. (*See* Pl.'s Resp. *passim*.)

### a. Persepolis Collection

Plaintiffs present several arguments as to why the ownership of the Persepolis Collection is contested. Plaintiffs initially suggest that the mere filing of the pleadings in this case indicates that title is contested. (Pl.'s Resp. at 10 n.9.) For this to be the case, the pleadings would have to constitute a bona fide opinion in writing–within the meaning of § 535.333(a)–that Iran does not have title. This argument is not persuasive. As Defendants point out, the standard for filing pleadings and other court documents is found in Federal Rule of Civil Procedure 11. (Def.'s Reply at 4-5.) Rule 11 requires that the party filing have a good faith basis in law or in fact for what is filed. *See* Fed. R. Civ. P. 11. As Defendants' counsel pointed out at oral argument, an

attorney filing a paper with the Court who has little confidence in her likelihood of prevailing nonetheless may be free from risk of sanction under Rule 11 if that attorney's arguments are simply "nonfrivolous," "have evidentiary support," or "are likely to have evidentiary support." *See* Fed. R. Civ. P. 11(b)(2). Plaintiffs have not demonstrated that "good faith basis" within the meaning of Rule 11 is qualitatively equal to the "bona fide" standard found in § 535.333(c). Thus, the Court will not equate the two standards, and for this reason, the Court holds that the pleadings filed cannot be "bona fide opinions" supporting a finding that the Persepolis Collection's ownership is contested. In short, Plaintiffs cannot rely on the pleadings in this case in order to argue that the Persepolis Collection is currently blocked.

Although the pleadings do not constitute a bona fide opinion, Plaintiffs in their Rule 56(f) motion seek to discover whether the University at any point received anything that might constitute a bona fide opinion indicating that Iran does not have title (or only has partial title) to the Persepolis Collection. (Pl.'s Resp. at 35.) Plaintiffs indicate that some representations that the University has made indicate that the University might believe that Iran has partial title. Plaintiffs point out that the University of Chicago has stated that Iran has a reversionary interest in the Persepolis Collection. (Pl.'s Resp. at 9.) Although the University has present possession of the Collection (in order to engage in research and study of the Collection), the University will return the Collection to Iran at some future point. (*Id.*) According to Plaintiffs, this means that Iran has only partial title to the Collection, which amounts to contested title within the meaning of § 535.333. Plaintiffs in their motion argue that they are entitled to further discovery under Rule 56(f) in order to pursue the factual underpinnings of this argument. (Pl.'s Resp. at 35.)

- 9 -

Defendants respond by stating that the University has always maintained–consistent with the position of Iran–that Iran owns the Persepolis Collection. Thus, Defendants argue, no title contest exists and the assets were unblocked by Executive Order No. 12,281. Defendants also dispute the legal implications Plaintiffs draw from the reversionary interest. (Def.'s Reply at 8-10.)

The Court is not convinced that a reversionary interest can itself constitute a title contest. Two parties can be in full agreement that one party owns a piece of property while the second party maintains possession of that property. The fact that one party has present possession and the other party has delayed possession does not of itself indicate that the party with delayed possession has less than full title. In short, the mere fact that Iran has a reversionary interest does not indicate that title is contested.

Nevertheless, Plaintiffs are entitled to discover whether the University at any point did not recognize Iran's title, and whether this belief was ever memorialized in a bona fide opinion under § 535.333. The Court recognizes that in prior documents filed with this Court the University and Defendants have consistently agreed that Iran owns the Persepolis Collection. However, Plaintiffs have shown what they intend to seek (i.e., a bona fide opinion), and how this will advance their argument (i.e., indicate whether the Persepolis Collection is blocked). Plaintiffs' discovery on this matter will not result in a fishing expedition with no real possibility of unearthing relevant material. Thus, Plaintiffs are entitled to discover whether the a bona fide opinion exists.

- 10 -

### b. Chogha Mish Collection

Plaintiffs argue that the title to the Chogha Mish Collection might be contested, and that further discovery will illuminate whether this is the case. Plaintiffs point out that the disposition of the Chogha Mish Collection is before the Iran-United States Claims Tribunal, and that the State Department directed the University not to return the Chogha Mish Collection to Iran for the time being. (Pl.'s Resp. at 22.) Plaintiffs argue that this proceeding before the Tribunal implies that the University might currently dispute the ownership of the Chogha Mish Collection, which would indicate that Executive Order No. 12,281 did not unblock it. This argument requires that Plaintiffs be able to seek further discovery. Specifically, Plaintiffs seek copies of the pleadings before the Tribunal in order to determine the nature of the dispute and the extent that the title to the Chogha Mish Collection is at issue in those proceedings. (Pl.'s Resp. at 35.) As with the Persepolis Collection, Defendants state that the University has consistently stated that Iran owns the Chogha Mish Collection, and that therefore no title contest is present. (Def.'s Reply at 19-20.)

The Court believes that, although Defendants and the University may ostensibly agree on who owns the Chogha Mish Collection, Plaintiffs should be entitled to pursue further discovery in order to elucidate the factual picture. Plaintiffs have adequately demonstrated what materials they expect to discover (i.e., copies of the pleadings before the Iran-United States Claims Tribunal) and how these materials will further their arguments. Therefore, the Court grants their request.

### (c)     Herzfeld Collection

The Herzfeld Collection is currently in the possession of the Field Museum. (Def.'s Exempt Mem. at 2.) Defendants state repeatedly in their briefs that Iran makes no claim of ownership to the Herzfeld Collection and that Iran has never made such a claim of ownership. (*See, e.g.*, Def.'s Reply at 22.) According to Defendants, Iran sold this Collection years ago. (Def.'s Reply at 28-29.) Thus, following this logic, Iran no longer has title to the Herzfeld Collection, and because the Field Museum does not claim to have title in the Herzfeld Collection, title is not contested and the Collection was unblocked.

Iran must claim ownership of the Herzfeld Collection if Defendants desire to contest Plaintiffs' execution against the Herzfeld Collection. In the briefs submitted and at oral argument, counsel for Iran was careful to note that Iran had never claimed to own the Herzfeld Collection. But Iran's counsel would not affirmatively state that Iran did not own the Collection. Because Iran's failure to claim ownership implies that Iran does not in fact own the Collection, Defendants have no standing to challenge the disposition of the Herzfeld Collection. If Iran does not own the Herzfeld Collection, Iran's continuing interest in the ultimate disposition of this property must be considered merely sentimental. In order for Iran to claim that the Herzfeld Collection is immune, Iran must claim an ownership in this Collection.

Although Iran does not claim ownership, Plaintiffs argue that they can demonstrate that Iran actually does own the Herzfeld Collection. (Pl.'s Resp. at 23-25.) In order to support their argument that Iran owns the Herzfeld Collection, Plaintiffs point to an Iranian law that automatically operates to place discovered artifacts in Iran's ownership. (*See* Pl.'s Resp. at 25.) Based on this law, Plaintiffs argue that the Herzfeld Collection became the property of Iran by

operation of law when the Collection was discovered. Plaintiffs also point out that the Herzfeld Collection is currently the subject of a lawsuit in England to determine the ownership of the Herzfeld Collection. (*Id.*) Plaintiffs argue that additional discovery is necessary for Plaintiffs to develop their argument that Iran actually owns the Herzfeld Collection. (*Id.*) Toward this end, Plaintiffs seek copies of the pleadings in the English suit.

As with the other two collections, Plaintiffs have demonstrated that they intend to discover specific information that will advance their argument. The Court acknowledges Defendants' argument that, even if the operation of Iranian law gave title to Iran, Iran subsequently sold the Herzfeld Collection–which means that Iran no longer has title. (Def.'s Reply at 21-22.) At this time, the Court need not and does not determine the merits of the argument as to who owns the Herzfeld Collection. For the purposes of Rule 56(f), Plaintiffs need only show what they expect to discover and how this will help their argument. Plaintiffs have met this standard. For this reason, Plaintiffs should be able to discover this information.

### 2. FSIA

Under the FSIA, because Iran is a sovereign nation, it enjoys sovereign immunity. Section 1609 of the FSIA provides that "the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter." 28 U.S.C. § 1609. Thus, Iran's property in the United States will be subject to execution if some exception to sovereign immunity applies. Plaintiffs argue that § 1610 of the FSIA provides an exception.

Section 1610(a) provides the "commercial activity" exception: "[t]he property in the United States of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State . . . ." 28 U.S.C. § 1610(a). Plaintiffs' general argument is that the use of the Persian artifacts in the United States constitutes commercial activity sufficient to bring the artifacts within this exception. (*See, e.g.*, Pl.'s Resp. at 11-21.) This Court previously addressed the FSIA at length, holding that, while the University of Chicago's use of the artifacts in the United States could be commercial in nature, the acts were performed by the University of Chicago (and, by implication, by the Field Museum), and that in order to strip Iran of sovereign immunity, Iran must have performed the commercial activity. *See Rubin*, 349 F. Supp. 2d at 1112-13.

Now, Plaintiffs argue that Iran engaged in commercial activity through the actions of Iran's agent, the University of Chicago. (Pl.'s Resp. at 11-21.) Defendants argued at oral argument that Plaintiffs are precluded from raising this issue because the Court has already determined that the commercial activity exception does not apply. The Court notes that, as described below, Plaintiffs' argument is that the acts of the University of Chicago are commercial and are attributable to Iran through an existing agency relationship between Iran and the University and the Museum. The Court's prior opinion does not foreclose this possibility. The Court previously held that Iran's conduct was not commercial, and that Iran's conduct is what triggers the commercial activity exception. This leaves room for Plaintiffs' agency argument. Furthermore, the Court points out that, in overruling objections to this Court's decision on this point, Judge Manning specifically stated that this Court's decision on the commercial activity

- 14 -

exception would not be the law of the case. *See Rubin v. Islamic Republic of Iran*, 03 C 9370, 2005 WL 783057, at *1 (N.D. Ill. Mar. 18, 2005) ("While Judge Ashman's interpretation of the FSIA will certainly be relevant to this Court in a later motion to dismiss, it is not binding on this Court."). Thus, Plaintiffs are free to pursue their agency argument.

The Court turns now to the Plaintiffs' agency argument. Plaintiffs reason that a foreign state is not a physical person but is a legal person, and as such a foreign state can only act through its human agents. (Pl.'s Resp. at 11-12.) Plaintiffs argue that the University of Chicago is an agent of Iran, and that acts of the University of Chicago that are attributable to Iran are sufficient to constitute commercial activity, bringing Iran within the commercial activity exception. Specifically for this motion, Plaintiffs seek additional discovery "to complete the factual picture" surrounding this possible agency relationship. (Pl.'s Resp. at 21.) For this reason, Plaintiffs argue that the Court should deny Defendants' motion for summary judgment.

In an effort to demonstrate the viability of their argument, Plaintiffs point to the following pieces of evidence: a letter from the director of the University of Chicago's Oriental Institute to an Iranian ambassador indicating that the director would give "a full account of our activities in behalf of [Iran]"; a 1936 letter from a member of the Oriental Institute to Iran's Minister of Education stating that the Institute was "eager[] to cooperate loyally with the High Imperial Government"; a 1946 letter from a member of the Oriental Institute to an Iranian Ambassador acknowledging that the Oriental Institute knew it had a "great obligation . . . to both the government of Iran and to the scientific world in general to publish these documents [relating to the Persian artifacts]." Plaintiffs also state that "[t]he relationship between Iran and the Oriental Institute obligates it to 'report to the Embassy in Washington as each segment of the work is

- 15 -

finished.'" (Pl.'s Resp. at 19.) Plaintiffs' brief cites four other instances where correspondence between the University and Iran indicates that the University was performing work for Iran.

A preliminary issue the Court must address is whether, as a matter of law, a foreign state's property can fall within § 1610 by virtue of the acts of the foreign state's agent. Case law has held that a foreign state can waive its sovereign immunity under § 1605 of the FSIA. *See, e.g.*, *Virtual Defense & Dev. Int'l, Inc. v. Republic of Moldova*, 133 F. Supp. 2d 1, 5 (D.D.C. 1999) ("If the commercial activity is characterized as the actions taken by Virtual in its authority as an agent of Moldova, then the first clause of the commercial activity exception of the FSIA is satisfied."). Defendants' brief appears to question whether this application of § 1605 can transfer to § 1610, which applies here. (Def.'s Reply at 13 & n.6.) Section 1605(a) provides in relevant part that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a). This language is similar to the language used in § 1610(a)(2): "The property in the United States of a foreign state . . . used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State . . . ." 28 U.S.C. § 1610(a). The difference between these provisions, if any, must hinge on any difference between "commercial activity carried on in the United States by the foreign state," and "used for a commercial activity in the United States." The Court does not see any meaningful difference between these subsections.[2] The Court has little trouble finding that

_____

[2] The language in § 1610 supports the agency argument more than the language in § 1605. In § 1605, the sentence's actor is clearly the foreign state; in § 1610, the sentence is written in passive voice, without a clear actor.

- 16 -

the same logic that operates in deciding whether agency can waive sovereign immunity under § 1605 operates in the sphere of 1610 as well.

Defendants argue that the evidence Plaintiffs supply cannot show an agency relationship legally sufficient to trigger the commercial activity exception. Defendants point to cases addressing agency in the context of § 1605. These cases hold that, in order for a foreign state's agent to waive that state's sovereign immunity, actual authority is necessary; an agent operating on behalf of a foreign state under apparent authority will not trigger the exception. *See Dale v. Colagiovanni*, 443 F.3d 425, 428 (5th Cir. 2006) ("While this is an issue of first impression in this Circuit, both the Fourth and Ninth Circuits, the only Circuits to have directly addressed the issue, have concluded that conduct by an agent acting with apparent authority is insufficient to trigger the commercial activity exception and give a basis for jurisdiction against the state under FSIA."); *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 307 (9th Cir. 1997) ("The language of the commercial activity exception compels the conclusion that only evidence of actual authority can be used to invoke that exception."). Under Illinois law, an agency relationship exists where the words and conduct of the principal establish that the principal has sufficient control over the agent's actions and has the power to affect the agent's legal relationships. *See Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000); *Zielke v. IBEW*, 95 CV 0618, 1997 U.S. Dist. Lexis 14853, at *17 (N.D. Ill. Sept. 23, 1997). Actual authority exists where the principal has demonstrated this control; apparent authority exists where a third party engages with the apparent agent under a reasonable belief that the agent acting on behalf of the principal. *Zahl v. Krupa*, 365 Ill. App. 3d 653, 661, 850 N.E.2d 304, 311-12 (App. Ct. 2006) ("Apparent authority, by contrast, arises when the principal holds an agent out as possessing the authority to act on its

behalf, and a reasonably prudent person, exercising diligence and discretion, would naturally assume the agent to have this authority in light of the principal's conduct." (citing *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056, 675 N.E.2d 217 (App. Ct. 1996))).

Plaintiffs are entitled to explore their agency theory. Although the Court agrees with Defendants that the existing cases hold that actual agency is required, Plaintiffs' evidence demonstrates that actual authority might exist. While the Court does not here decide the merits of Plaintiffs' agency argument, Plaintiffs' evidence and arguments regarding agency need not at this point be convincing. Rather, under Rule 56(f), Plaintiffs need only show what evidence they intend to discover and how that evidence will advance their arguments. With this in mind, the evidence that Plaintiffs recite is at least sufficiently particular to demonstrate to the Court that a possible actual agency relationship exists, and that further discovery may reveal further evidence–perhaps from the alleged principal, Iran–that would support a finding of an actual agency relationship.

With this in mind, the evidence Plaintiffs include in their Response does not speak only to whether apparent authority is present, as Defendants suggest in their brief. Rather, the correspondence cited in Plaintiffs' brief may be evidence of actual authority. Plaintiffs are entitled to develop this theory, and to do that, they will need to continue discovery. For this reason, the Court grants Plaintiffs' 56(f) motion.

### B.    Defendants' Protective Order

Along with its motion for summary judgment, Defendants filed a motion for a protective order. In this motion, Defendants make two arguments: first, Defendants suggest that they are

"not subject to merits discovery" because they have made a "special and limited appearance";

second, Defendants argue that "a sovereign state is not a proper deponent under [Federal Rule of

Civil Procedure] 30(b)(6)."[3] (Def.'s Protective Order Mem. at 1-2.) Neither of these arguments

convinces the Court.


## 1. Special or Limited Appearance

Defendants argue that they made a special appearance "for the sole purpose of asserting"

sovereign immunity under the FSIA. (*See* Def.'s Protective Order Mem. at 2.) Toward this end,

counsel for Defendants stated that he

> enters his special and limited appearance as counsel for the Islamic Republic of
> Iran pursuant to Sections 2-301 and 2-1402(g) of the Illinois Code of Civil
> Procedure, (735 ILCS 5/2-301 and 5/2-1402(g)), Illinois Supreme Court Rules
> 181 and 277 and the Court's Memorandum and Order dated June 22, 2006, for the
> sole and limited purpose of asserting its rights under the Foreign Sovereign
> Immunity [sic] Act, 28 U.S.C. § 1602 *et seq.*, in this citation proceeding only, and
> not generally pursuant to the Federal Rules of Civil Procedure or 28 U.S.C.
> § 1654.

(Def.'s Protective Order Mem. at 3 (quoting Dkt. No. 169).)

---

[3] Defendants also argue that discovery should be deferred until after Defendants' motion
for summary judgment (i.e., their motion to declare the property immune or exempt) is finally
determined. (Def.'s Protective Order Mem. at 4-7.) Defendants reason that discovery is
unwarranted under the FSIA and TRIA because Plaintiffs have not shown that the Persian
artifacts are subject to execution under either of these acts. (*See* Def.'s Protective Order Mem. at
6-7 ("In the absence of any showing–or any likelihood of showing–that the artifacts are used by
Iran for a commercial activity in the United States [under the FSIA], discovery of Iran on this
issue–which is the only relevant issue–should not be allowed."); *id.* at 7 ("Iran's testimony will
therefore shed no useful light on the question at the heart of the TRIA inquiry. Accordingly,
discovery of Iran on the TRIA issue should not be allowed.").) As discussed in detail above,
Plaintiffs have demonstrated that further discovery is necessary on the issues of the TRIA and the
FSIA. Therefore, this argument does not convince the Court.

Illinois law applies in this issue. Rule 69(a) states, "The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held . . . except that any statute of the United States governs to the extent that it is applicable." Fed. R. Civ. P. 69(a). Thus, in this case the Court applies the procedural laws of Illinois, including Illinois statutes and Illinois Supreme Court rules. *See Cacok v. Covington*, 111 F.3d 52 (7th Cir. 1997) (following Rule 69(a) and applying Illinois law and an Illinois Supreme Court Rule).

Despite Defendants' statements that may imply the contrary, a limited appearance as such is not an option Defendants can exercise. A limited appearance–where it exists–allows a party to appear before the Court in order to contest the Court's personal jurisdiction without waiving personal jurisdiction by so doing. *See* Black's Law Dictionary 107 (8th ed. 2004).

Although Illinois may have allowed special appearances at one time, Illinois no longer does. The Illinois Code of Civil Procedure was amended in order to take this option out. *See KSAC Corp. v. Recycle Free, Inc.*, 364 Ill. App. 3d 593, 595, 846 N.E.2d 1021, 1023 (App. Ct. 2006) ("The current version of section 2-301 differs from the earlier version in four significant ways. First . . . the current version no longer requires or even provides for the filing of a special appearance to preserve a jurisdictional objection." (citation omitted)); *see also* 735 Ill. Comp. Stat. 5/2-301.

The Court notes that, like the Illinois Code of Civil Procedure, the Federal Rules of Civil Procedure do not provide a mechanism by which a party can appear specially. *See, e.g., United States v. Republic Marine, Inc.*, 829 F.2d 1399, 1402 (7th Cir. 1987) ("Of course, the general rule

- 20 -

in civil actions is now (and has been for some time) that any appearance in an action is a general appearance." (citations omitted)); *Beveridge v. Mid-West Mgmt., Inc.*, 78 F. Supp. 2d 739, 742 (N.D. Ill. 1999) (noting that the purpose of Rule 12 "was to eliminate the need for special appearances to challenge jurisdiction"). Therefore, under federal law, Defendants' argument also fails.

Defendants argue that, under Illinois Supreme Court Rule 201(l), when a defendant files a motion contesting personal jurisdiction under section 2-301, discovery should be allowed only as to the personal jurisdiction issue and not as to the merits of the case. (Def.'s Protective Order Mem. at 9.) Illinois Supreme Court Rule 201(l) states:

> While a motion filed under section 2-301 of the Code of Civil Procedure is pending, a party may obtain discovery only on the issue of the court's jurisdiction over the person of the defendant unless: (a) otherwise agreed by the parties; or (b) ordered by the court upon a showing of good cause by the party seeking the discovery that specific discovery is required on other issues.

Ill. Sup. Ct. R. 201(l).

The matters presently at issue in this litigation relate to the substance of a supplemental proceeding–namely, the execution or attachment against the Persian artifacts–not the Court's jurisdiction over Iran. The Court notes that the *Campuzano* court has already found that Iran is subject to the jurisdiction of United States courts. *See Campuzano*, 281 F. Supp. 2d at 271-72 (finding jurisdiction over Plaintiffs' claims based on the FSIA). Illinois Supreme Court Rule 201(l) is clearly inapplicable.

Furthermore, Plaintiffs' discovery requests bear directly on Defendants' motion for summary judgment. Although they claim that the question is jurisdictional, Defendants identify the present issue as "whether, under the FSIA, the artifacts that are the subject of the citation are

protected assets of Iran." (Def.'s Protective Order Mem. at 10.) Defendants also state that, "at this stage in [Iran's] involvement in this action is limited to, and must be limited to, whether the artifacts are immune from execution," (Def.'s Protective Order Mem. at 9), and Defendants claim that "[t]he Court can determine [this] issue without any discovery." (Def.'s Protective Order Mem. at 10.) The Court disagrees. As discussed above at length, in order to rebut Defendants' arguments Plaintiffs are entitled to discovery on this issue. The Court will not preclude Plaintiffs from seeking discovery that relates to the merits of the summary judgment motion that Defendants brought.

Even if a personal jurisdiction issue were present, the Court questions whether Rule 201(l) has any applicability to this case. Rule 201(l) is most clearly applicable where the defendant seeks to challenge personal jurisdiction at the outset of the case. The Court recognizes the dearth of cases that have addressed Rule 201(l) after the change in section 2-301; apparently, only one case has addressed it directly. In *Haubner v. Abercrombie & Kent International, Inc.*, the court found that, by serving a request to admit (that addressed the merits of the case) on the plaintiffs, the defendant had waived any argument as to the court's personal jurisdiction over the defendant. 351 Ill. App. 3d 112, 118, 812 N.E.2d 704, 709-10 (App. Ct. 2004). *Haubner* applied Rule 201(l) in order to rein in the jurisdiction-objecting defendant's discovery–not in order to block the merits discovery of the plaintiff. The Court has serious doubts that Rule 201(l) could shield a jurisdiction-objecting defendant from a plaintiff's merits discovery, as Defendants argue, and this view is implicitly acknowledged elsewhere. *See* 10 Ill. Prac., Civil Discovery § 1.54 ("Paragraph (2) [of Rule 201(l) recognizes that discovery may proceed on other than jurisdictional issues before the court rules on the objecting party's motion objecting to

- 22 -

jurisdiction."). Indeed, taken to its logical conclusion, Defendants' argument would allow any defendant to stagnate merits discovery by objecting to personal jurisdiction.

Thus, the Court denies Defendants' motion for a protective order.


### 2. Rule 30(b)(6) Deponents

In its second argument, Defendants argue that Iran is not a proper deponent under Federal Rule of Civil Procedure 30(b)(6).[4] Defendants argue that, "[b]ecause the rule does not expressly permit the deponent to be a sovereign state," the Court should quash Plaintiffs' notice of deposition. (Def.'s Protective Order Mem. at 11.) Defendants state that the Rule's plain language should control, and because the Rule does not include "foreign sovereign" in its list of proper deponents, the Court should not allow that insertion here.

This argument is not convincing. First, although the Court acknowledges that the Rule's plain language controls and that "foreign sovereign" is not listed in the Rule, the Rule's list is not exclusive. For example, by its bare terms the Rule does not allow depositions of limited liability companies. The Court does not believe that the Rule was meant to exempt this class of business entities simply because it was not listed explicitly. Rather, the list is non-exhaustive, and listed items are exemplary and guide the litigant in understanding the purpose of the Rule. Thus, the Court will not gather from the absence of "foreign sovereign" that Iran is not a proper Rule 30(b)(6) deponent.

---

[4] Rule 30(b)(6) allows a party depose a corporation or other business entity or governmental agency. That deponent will then designate a representative who is deposed on behalf of the entity-deponent. Fed. R. Civ. P. 30(b)(6).

As Defendants acknowledge, few cases have addressed the issue of whether a foreign sovereign can be a proper Rule 30(b)(6) deponent. *See McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 79-80 (D.D.C. 1999); *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 94 Civ. 1942, 1995 U.S. Dist. Lexis 17187 (S.D.N.Y. Nov. 17, 1995). Defendants argue that *McKesson* gives only scant analysis in its decision, and that the parties in *Zappia Middle East* assumed that the Rule 30(b)(6) deposition was proper. (Def.'s Protective Order Mem. at 11-12.)

The Court does not so easily brush these cases aside. *McKesson's* reasoning is not as scant as Defendants paint it. *McKesson* recognizes that Rule 30(b)(6) depositions are appropriately used to depose governmental entities in the United State, as well as foreign corporations. *McKesson*, 185 F.R.D. at 79-80. *McKesson's* reasoning, though succinct, is persuasive. What is more, the Court notes that both of these cases addressed Rule 30(b)(6) depositions in the context of the FSIA, and in *McKesson*, the Rule 30(b)(6) deponent was Iran itself. The Court sees no need to deviate from these cases. Although the cases might not have contained extensive analysis as to why Iran is a proper Rule 30(b)(6) deponent, Defendants have not propounded any case—or any other material—demonstrating that foreign sovereigns are not proper Rule 30(b)(6) deponents. Because of the strong similarities between the present case and the cases that address this issue, the Court holds that Iran is a proper Rule 30(b)(6) deponent. Therefore, the Court denies Defendants' motion for a protective order.

### III. Conclusion

For the foregoing reasons, the Court grants Plaintiffs' motion to continue discovery. Because the Court grants this motion, the Court does not rule on Defendants' motion for summary judgment at this time.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
Dated: March 19, 2007.                    United States Magistrate Judge

- 25 -

Copies have been mailed to:

DAVID J. STRACHMAN, Esq.
ROBERT PARKER, Esq.
McIntyre, Tate & Lynch, L.L.P.
321 South Main Street
Suite 300
Providence, RI 02903

ROBERT D. CHEIFETZ, Esq.
DANIEL A. SHMIKLER, Esq.
Sperling & Slater
55 West Monroe Street
Suite 3200
Chicago, IL 60603

MATTHEW G. ALLISON, Esq.
THOMAS A DOYLE, Esq.
Baker & McKenzie, L.L.P.
One Prudential Plaza, Suite 3500
130 East Randolph Drive
Chicago, IL 60601

Attorneys for Plaintiffs

MICHAEL D. McCORMICK, Esq.
RENEE H. WISZOWATY, Esq.
Litchfield Cavo, L.L.P.
303 West Madison Street
Suite 300
Chicago, IL 60606

THOMAS CORCORAN, JR., Esq.
LAINA C. WILK, Esq.
Berliner, Corcoran & Rowe, L.L.P.
1101 Seventeenth Street, N.W.
Washington, D.C. 20036

Attorneys for Defendants