## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JENNY RUBIN, et al., ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | No. 03 CV 9370 |
| THE ISLAMIC REPUBLIC OF IRAN, et al., ) | Judge Blanche M. Manning |
| Defendants, ) | Magistrate Judge Martin C. Ashman |
| v. ) | |
| ) | |
| THE UNIVERSITY OF CHICAGO, et al. ) | |
| Citation Third Party Respondents. ) | |

## MEMORANDUM AND ORDER

Magistrate Judge Ashman recently granted the plaintiffs' requests for discovery they allegedly needed to adequately respond to a motion for summary judgment. The magistrate judge's order has drawn objections from both defendant Islamic Republic of Iran, as well as the plaintiffs. For the reasons that follow, Iran's objections are overruled, and the plaintiffs' objections are overruled as moot.

## BACKGROUND

To review, the plaintiffs obtained a multi-million dollar judgment against Iran for injuries they suffered as a result of a suicide bombing in Israel. *See Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 274-77 (D.D.C. 2003). Iran has not paid the judgment, so the plaintiffs instituted this suit seeking execution or attachment against Iranian assets in the United States. Among those assets are Persian artifacts currently in the possession of citation respondents the University of Chicago (the Persepolis collection and the Chogha Mish collection) and the Field Museum (the Herzfeld collection).

The plaintiffs contend that the artifacts are subject to attachment under the Terrorism Risk Insurance Act ("TRIA"). *See* Terrorism Risk Insurance Act, Pub. L. No. 107-297, § 201, 116 Stat. 2,322, 2,337 (codified at 28 U.S.C. § 1610 note). Under the TRIA, assets that are considered "blocked," or frozen, are subject to "execution or attachment in aid of execution" for judgments against terrorist parties. *Id.* at § 201(a). The Persian artifacts were blocked under Executive Order No. 12,170, signed in response to the Iranian hostage crisis in 1979. *See* 46 Fed. Reg. 7,923 (Jan. 19, 1981). However, two years later Executive Order 12,281 "unblocked" previously-blocked assets that were "uncontested and non-contingent liabilities and property interests of the Government of Iran." 31 C.F.R. §§ 535.215(a), 535.333(c). An asset is considered contested if "the holder thereof reasonably believes that Iran does not have title or has only partial title." 31 C.F.R. § 535.333(c). Such a belief is reasonable only if based upon "a bona fide opinion, in writing, of an attorney." *Id.* The plaintiffs contend that ownership of the Persian artifacts may be contested, and sought from the magistrate judge additional discovery on that issue.

Alternatively, the plaintiffs have argued that the artifacts are subject to attachment under the Foreign Sovereign Immunities Act ("FSIA"). *See* 28 U.S.C. § 1609. Under the FSIA, the property of a foreign state is immune from attachment unless an exception applies. *Id.* The plaintiffs contend that the "commercial activity" exception applies, under which property loses its immunity if the foreign state used it for a commercial purpose. *Id.* at § 1610(a). The plaintiffs have identified a variety of letters from the University to Iranian officials, including ones with progress reports on the research performed on the Persian artifacts. According to the

plaintiffs, the letters suggest that the University acted as Iran's agent and used the artifacts for a commercial purpose, so the commercial activity exception applies.

Iran filed a motion for partial summary judgment with the magistrate judge seeking a declaration that its property in the United States is exempt from execution. *See* Fed. R. Civ. P. 56(b). In response, the plaintiffs filed a motion for additional discovery under Federal Rule of Civil Procedure 56(f). Under Rule 56(f), the non-moving party to a motion for summary judgment may ask the court for additional discovery "[s]hould it appear from the affidavits . . . that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." The court enjoys significant discretion to grant the motion as long as it is supported by an affidavit that describes why the party cannot adequately respond to the motion for summary judgment without additional discovery and what the additional discovery is expected to show. *See Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006).

In support of their Rule 56(f) motion, the plaintiffs identified the following two groups of documents they seek and the anticipated relevance to Iran's motion for partial summary judgement. The first group consists of documents regarding Iran's ownership interest in the Persian artifacts. Specifically, the plaintiffs seek (1) any bona fide opinion the University of Chicago has ever received that Iran has no title or only partial title in the Persepolis collection, (2) pleadings from a proceeding before the Iran-United States Claims Tribunal, in which the plaintiffs believe that Iran's ownership of the Chogha Mish collection has been challenged by the University of Chicago, and (3) pleadings from a proceeding in an English lawsuit in which Iran's ownership of artifacts such as the Herzfeld collection is at issue. The plaintiffs argue that these documents are relevant because if Iran's ownership of the artifacts is disputed, then these

artifacts were not unblocked by Executive Order 12,281 and are therefore subject to execution or attachment under the TRIA.

The second group consists of correspondence between the University of Chicago and Iran and other related documents that the plaintiffs expect to shed light on whether the University acted as Iran's agent. The plaintiffs contend that the University of Chicago's status as Iran's agent is relevant to the applicability of the "commercial activity" exception under the FSIA. *See* 28 U.S.C. § 1601 *et seq*. If the exception applies, the artifacts are not immune under the Act, and therefore subject to attachment or execution.

In addition to written discovery, the plaintiffs have also sought to depose the Islamic Republic of Iran under Federal Rule of Civil Procedure 30(b)(6). Iran has thus far refused, arguing that foreign sovereigns may not be deposed under that Rule.

The magistrate judge's order granted the plaintiffs all of the discovery they sought. In his order, the magistrate judge concluded that the plaintiffs had satisfied the requirements of Rule 56(f) by identifying the specific documents they sought and explaining the documents' relevance. The magistrate judge also concluded that foreign sovereigns like Iran are subject to Rule 30(b)(6), and therefore it must submit to the plaintiffs' deposition notice.

## ANALYSIS

Under Federal Rule of Civil Procedure 72(a), at a party's request the district court may review orders entered by a magistrate judge, but does so under the clear error standard. It may overturn the ruling "only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 943 (7th Cir.1997); *see also Anderson v. City of Bessemer,* 470 U.S. 564, 573 (1985). Review is deferential, and a

magistrate judge's ruling will be set aside or modified only if the ruling is clearly mistaken. *See Weeks*, 126 F.3d at 943; *FTC v. Pacific First Benefit, LLC*, 361 F. Supp. 2d 751, 754 (N.D. Ill. 2005).

Before the court are objections to the magistrate judge's order from both Iran and from the plaintiffs. The court will first review Iran's objections.

### A. Iran's Objections

Iran's objections fall into three categories: (1) objections to discovery of documents regarding Iran's ownership of the Persian artifacts; (2) objections to discovery of documents regarding the University's alleged role as Iran's agent; and (3) objections to the magistrate judge's conclusion that Iran may be deposed under Rule 30(b)(6).

### *Discovery Regarding Iran's Ownership of the Artifacts*

First, Iran argues that this court must adopt the position taken by the United States that Executive Order 12,281 unblocked the Persian artifacts, a position it espoused in a Statement of Interest filed in this case. *See Geier v. American Honda Motor Co.*, 529 U.S. 861, 883-84 (2000) (the United States' interpretation of its own regulations is entitled to at least "some weight"). The court has carefully reviewed the government's Statement of Interest. Although the government asserts that the artifacts are unblocked, it does not explicitly take into account the fact that Executive Order 12,281 unblocked only assets that were "uncontested and non-contingent liabilities." *See* 31 C.F.R. § 535.333(c). As detailed above, the plaintiffs have identified reasons they suspect that ownership of the artifacts might not have been uncontested in 1981, and therefore might remain blocked. Had the government's Statement of Interest

acknowledged that possibility, the court could have afforded it more weight than it can without any discussion of this critical issue.

Next, Iran asserts that under the TRIA, Iran's ownership of the artifacts may be contested only by the holder of the artifacts. The term "holder" is defined as "any person who possesses the property, or who, although not in physical possession of the property, has, by contract or otherwise, control over a third party who does in fact have physical possession of the property." 31 C.F.R. § 535.333(c). According to Iran, the plaintiffs cannot create a contest over Iran's ownership because they are not a "holder" under the regulation because they are not in possession of the artifacts. But the plaintiffs are not attempting to create a contest—they are attempting to discover evidence of a pre-existing contest. For instance, they are looking for any evidence that in the past, the University (the holder of the Persepolis and Chogha Mish collections) has received a bona fide opinion from an attorney calling into question Iran's ownership of the artifacts.

Additionally, the plaintiffs are looking for pleadings from the Iran-United States Claims Tribunal to discover if the United States ever disputed Iran's ownership of the Chogha Mish collection  It suspects that the United States is disputing Iran's ownership because the Chogha Mish collection is the subject of a proceeding before the Claims Tribunal, and because the United States has apparently directed the University not to return the collection to Iran. Based upon the United States' direction not to return the collection, the plaintiffs contend that the United States controls the possessor—the University—and is therefore also considered a "holder" under the regulation. Because the plaintiffs have explained how the United States may be a holder, have identified a reasonable basis for believing that the United States is contesting Iran's ownership of

the artifacts, and have explained why a contest over ownership may impact whether or not Executive Order 12,281 unblocked the artifacts, the plaintiffs have sufficiently established why they are entitled under Rule 56(f) to the additional discovery they sought.

Finally, Iran argues that the magistrate should not have permitted discovery of the pleadings of the case pending in England because the Herzfeld collection is not the subject of that case. Iran contends that the issue in the English lawsuit is Iran's ownership of artifacts similar to, but not part of, the Herzfeld collection. But the magistrate judge permitted discovery of the pleadings not because the Herzfeld collection was the subject of the English lawsuit, but rather because the ownership issue raised in that lawsuit—whether Iran owns artifacts excavated in Iran by operation of Iranian law—would have a bearing on Iran's ownership of *all* excavated artifacts, not just the artifacts within the Herzfeld collection. Therefore, this court agrees that the plaintiffs are entitled to explore the issue further, and that discovery of the pleadings in the English lawsuit would serve that end.

Based upon its review of the record and the parties' briefs, this court agrees with the magistrate judge's conclusion that the plaintiffs have sufficiently identified both the relevance of Iran's putative ownership of the Persian artifacts, as well as the documents that will assist them in exploring the issue further. Accordingly, the court cannot conclude that the magistrate judge's order permitting discovery of these documents was clearly erroneous and Iran's objection on this issue is overruled.

### *Discovery Regarding the University's Alleged Role as Iran's Agent*

Iran identifies two reasons why the magistrate judge's decision permitting discovery into whether the University of Chicago acted as Iran's agent was erroneous. First, Iran contends that

the plaintiffs' assertion of agency is untimely. In support, it cites to an earlier order entered by this court in which the court declined to address the plaintiffs' agency argument. However, in that order the court declined to address the agency argument because the plaintiff raised it for the first time in an objection to an order entered by the magistrate judge. *See* Minute Order dated March 18, 2005, (Docket No. 52) at 2. The court thus did not address the plaintiffs' agency argument because the argument had been forfeited in connection with the objection before the court, not because it was time-barred. Therefore, Iran's argument this court previously held that the plaintiffs' agency argument is time-barred is baseless.

Next, Iran contends that the magistrate judge misapplied the law of agency when he determined that letters from the University to Iran suggested that the University may have acted as Iran's agent. The magistrate judge permitted the plaintiffs to conduct additional discovery based upon letters in which the University wrote to Iranian officials suggesting that a relationship between the University and Iran existed. The letters included promises of "full account of our activities in behalf of [Iran]," as well as an acknowledgment by the University that it owed a "great obligation . . . to both the government of Iran and to the scientific world in general to publish" documents about Iran's Persian artifacts. Iran contends that because all of these letters are from the University—the alleged agent—they do not constitute evidence of agency, which exists where the words and conduct *of the principal* establish that the principal controls the agent. *See Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000). However, under Rule 56(f), a plaintiff is entitled to additional discovery as long as he or she can demonstrate that relevant material may exist. Therefore, even though the University's letters may fall short of establishing agency definitively, they suggest that such a relationship was

possible.  Therefore, the magistrate judge did not clearly err when he permitted the plaintiffs to seek additional discovery regarding the issue of agency.

### *Iran as a Rule 30(b)(6) Deponent*

Finally, Iran objects to the magistrate's order permitting it to be designated as a Federal Rule of Civil Procedure 30(b)(6) deponent.  Under Rule 30(b)(6), a party may name as a deponent a "public or private corporation or a partnership or association or governmental agency."  The deponent will then designate a representative to testify on behalf of the entity.  The plaintiffs want to depose Iran under Rule 30(b)(6), but Iran has resisted arguing that "foreign sovereigns" are not among the entities specifically listed in Rule 30(b)(6).

The magistrate judge concluded that Iran may be named as a Rule 30(b)(6) deponent, relying on *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 79-80 (D.D.C. 1999).  In *McKesson*, the court held that even though Rule 30(b)(6) did not explicitly mention "foreign sovereign," the rule did explicitly mention "governmental agenc[ies]," and that courts had interpreted that phrase to include governmental entities within the United States.  *Id.*  The *McKesson* court also held that Rule 30(b)(6) lacked any geographic component restricting its application to entities within the United States.  *Id.* at 80.  Taking all of that into account, the *McKesson* court concluded that there was no policy reason against interpreting Rule 30(b)(6) to include foreign governmental entities such as Iran, and permitted the plaintiffs to name Iran as a Rule 30(b)(6) deponent.  *Id.*

Iran argues that the magistrate judge erred by relying on *McKesson* because under the plain language of Rule 30(b)(6), foreign sovereigns are not among the entities listed as being possible deponents under the Rule.  However, under *McKesson*, foreign sovereigns are covered

by the rule as a "governmental agency." Iran has cited no case reaching a contrary result, and because the court finds the reasoning in *McKesson* to be sound, it declines to adopt a contrary position in this case.

Accordingly, the court cannot conclude that the magistrate judge clearly erred by permitting the plaintiffs to depose Iran under Rule 30(b)(6), and therefore overrules Iran's objection on this issue.

### B. Plaintiffs' Objections

Even though the magistrate judge's order ultimately granted the plaintiffs the discovery they sought, the order rejected some of the alternative arguments that they plaintiffs have made. In the event this court sustained Iran's objection to the magistrate judge's order, the plaintiffs filed their own objection in order to preserve any argument they may want to make that the magistrate judge's rejection of their alternative arguments was erroneous. However, because the court has overruled Iran's objection to the magistrate judge's order, it need not address the plaintiffs' objections and thus overrules the objections as being moot.

## CONCLUSION

For the reasons stated, Iran objections [272-1] to the magistrate judge's order of April 17, 2007, are overruled, while and the plaintiffs' objections [273-1] are overruled as moot.

ENTER:

DATE: July 26, 2007

Blanche M. Manning
United States District Judge